# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BETSY NELSON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONSTAR MORTGAGE, LLC d/b/a MR COOPER, and CENLAR AGENCY, INC. d/b/a CENLAR FSB, <br><br> Defendants. | Case No.: 23-cv-3339 <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for mortgage servicing practices that violate the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, ("RESPA") and common law.

2. Specifically, Defendants, who each acted as servicers of Plaintiff and class member's FHA mortgage loans, had a pattern and practice of failing to properly credit the balance of such loans upon receipt of funds from the Department of Housing and Urban Development in connection with forbearances provided under the CARES Act. *See, e.g.*, 15 U.S.C. § 9056(b)(1).

3. As a result of these errors, Defendants overstated the balance of Plaintiff and class members mortgage loans and, in the event they refinanced, sold their home, or the loan was otherwise paid-off, overcharged them up to thirty per cent (30%) of the principal balance of their mortgage loans.

## JURISDICTION AND VENUE

4. The court has subject matter jurisdiction to grant the relief sought by the Plaintiff pursuant to 12 U.S.C. § 2614 and 28 U.S.C. §§ 1331, 1337, and 1367. The court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1331(d) because this

is a class action in which: (1) there are more than one hundred (100) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

5. Venue in this District is proper in that Defendants directed their conduct into the District.

## PARTIES

6. Plaintiff Betsy Nelson (f.k.a. Betsy Kinney) is an individual who resides in the Western District of Missouri (Greene County).

7. Plaintiff is also a "borrower" as defined by RESPA, 12 U.S.C. § 2605, in that Plaintiff obtained a federally related mortgage loan that was serviced by Defendants.

8. Defendant Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Nationstar") is a foreign limited liability company with its principal offices located at 8950 Cypress Waters Boulevard, Dallas, Texas 75019.

9. Nationstar is one of the largest mortgage servicers in the United States. *See, e.g.*, https://www.housingwire.com/articles/42231-big-banks-release-their-hold-on-mortgage-servicing-industry/ (accessed November 2, 2023) ("The largest non-bank servicer, Nationstar Mortgage, which now does business as Mr. Cooper, continued its acquisition activity through the year, growing 7.6% over the year, according to Fitch's report.").

10. Nationstar is a "servicer" as defined by RESPA, 12 U.S.C. § 2605, in that Nationstar was responsible for servicing a federally related mortgage loan.

11. Defendant Cenlar Agency, LLC d/b/a Cenlar FSB ("Cenlar") is a foreign limited liability company with its principal offices located at 425 Phillips Boulevard, Ewing, NJ 08618.

2

12. Cenlar is a "servicer" as defined by RESPA, 12 U.S.C. § 2605, in that Cenlar was responsible for servicing a federally related mortgage loan.

## FACTS

12. On or around October 31, 2018, Plaintiff entered into a note and mortgage with Flat Branch Mortgage, Inc. ("Flat Branch") in the amount of $157,509.00 (the "Mortgage Loan") to purchase a real estate property located at 9349 East State Highway DD, Strafford, MO 65757 (the "Property").

13. The Mortgage Loan was secured by the Property. The Property features a single-family home, built in 1929, situated on 35 acres of land. *See* https://www.zillow.com/homedetails/9349-E-State-Hwy-Strafford-MO-65757/50226153_zpid/.

14. The Mortgage Loan is a "federally related mortgage loan," "residential mortgage transaction," and "consumer credit transaction secured by a consumer's principal dwelling" as those terms are used in RESPA, TILA, Regulation X, and Regulation Z. 12 U.S.C. § 2601(a); 15 U.S.C. § 1602; *see Dellis v. Fay Servicing, LLC*, No. 18-C-202, 2019 U.S. Dist. LEXIS 105036 *14 (E.D. Wis. June 21, 2019) ("The statute [RESPA] applies to 'federally related mortgage loan[s],' a term that includes loans secured by a lien on residential real estate 'designated principally for the occupancy of from one to four families,' for which the lender is federally regulated or has deposits or accounts insured by the federal government.").

15. Sometime before May 1, 2020, Plaintiff applied for a forbearance on her mortgage payments as a result of economic hardship she was experiencing in connection with the COVID-19 Pandemic. *See* 15 U.S.C. § 9056(b)(1); *see also* FHA Single Family Housing Policy Handbook 4000.1, pt. III.A.2.o (available at https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsghhdbk1223.pdf). On or around May 1, 2020, Plaintiff was granted such

3

forbearance, which provided for, among other things, the suspension of her monthly mortgage payments through March 30, 2021.

16. On or around May 4, 2021, servicing of the Mortgage Loan was transferred to Cenlar.

17. While the Mortgage Loan was serviced by Cenlar, Plaintiff's forbearance was extended through July 31, 2021. Plaintiff ultimately accrued $20,748.00 in suspended payments.

18. At the conclusion of the forbearance period, on or around August 26, 2021, Plaintiff executed a "Partial Claims Mortgage," which granted a lien on the Property to the "Secretary of the Department of Housing and Urban Development" ("HUD") in the amount of $20,748.00, the total amount of suspended payments, in consideration for HUD tendering such amount to Cenlar and allowing Plaintiff to repay such suspended payments upon the completion of the Mortgage Loan. A copy of the recorded Partial Claims Mortgage is attached hereto as Exhibit A.

19. The Partial Claim Mortgage was prepared by Cenlar, and, upon information and belief, the servicer of the Mortgage Loan was legally bound to service the Partial Claim Mortgage.

20. On or around September 2, 2021, servicing of the Mortgage Loan was transferred to Nationstar as a subservicer for Lakeview Loan Servicing, LLC.

21. On or around September 2, 2021, the Partial Mortgage lien was also recorded by Greene County's Recorder of Deeds.

22. Upon information and belief, HUD tendered payment of the suspended payments in the amount of $20,748.89 at some point between August 26, 2021 and December 31, 2021, but neither Cenlar nor Nationstar properly credited such payment to the balance of the Mortgage Loan.

23. On or around January 26, 2022, Plaintiff made an application to refinance the Mortgage Loan through Flat Branch in order to take advantage of low interest rates. In the course

of submitting her application, Plaintiff learned that Nationstar had overstated the payoff balance by at least $20,748.00.

24. Upon information and belief, Nationstar overstated the payoff balance of the Mortgage Loan because Nationstar and/or Cenlar failed to credit the HUD payment.

25. Between March 5, 2022 and March 16, 2022, Plaintiff contacted Nationstar multiple times by telephone to alert Nationstar to the error so that it could be corrected for the purpose of refinancing the Mortgage Loan, but none of the representatives of Nationstar acknowledged the error, and Plaintiff received no further response from Nationstar.

26. On a March 16, 2022 phone call with a person calling on behalf of Plaintiff, a Nationstar representative confirmed that Plaintiff had called multiple times about this issue and that an escalation ticket had been entered and advised that Nationstar had been receiving phone calls regarding the same issue from several customers.

27. On a March 17, 2022 phone call with a person calling on behalf of Plaintiff, a member of Nationstar's escalation response team indicated that this was a "widespread issue" and advised that Nationstar had assigned several case numbers to the issues Plaintiff raised, including some case numbers that were closed as "issue resolved" notwithstanding the fact that the issues clearly had not been resolved.

28. On March 31, 2022, as a result of Nationstar's failure to correct the payoff balance of the Mortgage Loan within a reasonable time, Plaintiff was forced to accept the offer to refinance the Mortgage Loan subject to the inflated balance in order to lock-in the low interest rate.

29. On or around April 5, 2022, Nationstar received payment of the entire inflated payoff balance it claimed in connection with the Mortgage Loan, which doubled the amount of the

5

suspended payments, and which included the amounts owed to HUD in connection with the Partial Mortgage Claim.

30. On or around April 13, 2022, after Plaintiff engaged counsel to contact Nationstar on her behalf, Nationstar sent Plaintiff's counsel a letter finally acknowledging that it improperly stated the payoff amount of the Mortgage Loan. A copy of the letter is attached to this Complaint as <u>Exhibit B</u>.

31. <u>Exhibit B</u> states: "a check, in the amount of $21,679.95, will be refunded, to the address on file, within 20 business days of the payoff date."

32. Despite acknowledging its errors on or around April 13, 2022, Nationstar failed to tender payment to Plaintiff until on or around October 31, 2022, and Nationstar failed to compensate Plaintiff for the loss of any interest which accrued on the misappropriated funds.

33. Furthermore, Nationstar tendered payment in the amount of $20,748.89, which was $931.09 less than the amount it previously acknowledged overstating the payoff balance of the Mortgage Loan.

34. Furthermore, on or around December 7, 2023, Plaintiff discovered her property was still encumbered by the Partial Claims Mortgage because Nationstar failed to execute and record a lien release in connection with the Partial Claims Mortgage, despite being legally bound to do so upon receipt of the funds in connection with Plaintiff's refinancing the Mortgage Loan.

35. Nationstar and Cenlar acted with actual malice and intentional disregard for Plaintiff's rights.

36. Plaintiff incurred pecuniary loss as a result of Nationstar and/or Cenlar's unlawful conduct, including the accrual of additional interest on the inflated balance of the Mortgage Loan after it was refinanced. *See Ellis v. Nationstar Mortg., LLC*, No. 19-cv-661, 2021 U.S. Dist. LEXIS

6

Case 6:23-cv-03339-MDH   Document 16   Filed 12/21/23   Page 6 of 14

24358 at *5-6 (E.D. Wis. Feb. 9, 2021) ("I am also satisfied that Plaintiffs state plausible allegations of actual damages …. Even when refunded over a week after the fact, Plaintiffs still had to forego or delay other expenses to avoid more overdrafts and further harm to their relationship with their bank and credit rating.").

37. Plaintiff had to spend time and money investigating Nationstar and Cenlar's actions, including Nationstar's unreasonably long response time after being notified about the errors at issue. In failing to timely reimburse Plaintiff, Nationstar intentionally harmed her without just cause and is therefore liable for punitive damages. *See* Mo. Rev. Stat. § 510.261.

### *RESPA*

38. Congress passed the Real Estate Settlement Procedures Act ("RESPA") in 1974 to protect homeowners by assisting them in becoming better educated while shopping for real estate services, and eliminating kickbacks and referral fees, which add unnecessary costs to settlement services.

39. RESPA requires lenders and others involved in mortgage lending to provide borrowers with pertinent and timely disclosures regarding the nature and costs of a real estate settlement process, and also governs the servicing and administration of borrowers' accounts by servicers.

40. Administering accounts and initiating electronic funds transfers pursuant to established authorization protocols are standard servicers' duties.

41. 12 U.S.C. § 2605(k)(1)(C) states that a servicer of a federally related mortgage shall not fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties.

42. Congress has also authorized the CFPB to promulgate rules and regulations to curtail abusive practices by the servicers of federally related mortgage loans, including the regulations codified at 12 C.F.R. § 1024 ("Regulation X") and certain of the regulations codified at 12 C.F.R. § 1026 ("Regulation Z"), which the CFPB has described as "companion rules" that together implement the Real Estate Settlement Procedures Act and the Truth in Lending Act. *See, e.g.,* 78 Fed. Reg. 10696, 10866 n.276; 78 Fed. Reg. 10902.

43. These companion rules create obligations that are found by the CFPB by regulation to be appropriate to carry out the consumer protection purposes underlying TILA and RESPA.

44. One such "companion rule" is 12 C.F.R. § 1026.36(c), which governs practices in connection with credit secured by a consumer's dwelling, including both the crediting of payments and the accuracy of a servicer's payoff statements. 78 Fed. Reg. 10902, 10909; *see also* 78 Fed. Reg. 10696, 10741, 10742 (promptly crediting borrowers' payments and providing accurate payoff amounts are standard servicer's duties as set forth in section (6)(k)(1)(c) of RESPA).

45. 12 C.F.R. § 1026.36(c)(3) states:

Payoff statements. In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date.

46. Congress has authorized a private right of action for borrowers whose servicers violate RESPA, fail to timely correct errors, or otherwise fail to comply with any obligation found by the CFPB to be appropriate to carry out the consumer protection purposes of RESPA. 12 U.S.C. §§ 2605(f), 2605(k)(1)(E), and 2614.

## COUNT I – RESPA

47. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

48. Defendants overstated the payoff balance of the Mortgage Loan.

49. Defendants failed to correct their errors and provide an accurate payoff statement in a reasonable and timely fashion.

50. Defendants violated 12 U.S.C. §§ 2605(k)(1)(C) and 2605(k)(1)(E), and 12 C.F.R. §§ 1026.36(c)(1)(i), 1026.36(c)(1)(ii), and 1026.36(C)(3).

## COUNT II – Breach of Contract

51. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

52. In executing the Mortgage Loan and accompanying agreements, Plaintiff and Flat Branch entered into a contract.

53. By acting as a servicer of the Mortgage Loan, Defendants were bound by the terms of such contract.

54. By overstating the payoff balance of the Mortgage Loans, accepting payment in the amount of the overstated balance, and failing to timely refund Plaintiff and properly execute and record a release of liens in connection with the Mortgage Loan, Defendants breached such contract.

## COUNT III – Quasi Contract

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

56. In executing the Mortgage Loan and accompanying agreements, Plaintiff and Flat Branch entered into a contract.

57. By acting as a servicer of the Mortgage Loan, Defendants were bound under a theory of quasi-contract.

58. By overstating the payoff balance of the Mortgage Loans, accepting payment in the amount of the overstated balance, and failing to timely refund Plaintiff and properly execute and record a release of liens in connection with the Mortgage Loan, Defendants breached their duties to Plaintiff under a theory of quasi-contract.

## COUNT IV – Breach of Implied Covenant of Good Faith and Fair Dealing

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

60. An express or implied contract existed between Defendants and Plaintiff, the terms of which included an implied covenant of good faith and fair dealing. *See Rock Port Mkt., Inc. v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180 (Mo. App. W.D. 2017).

61. Defendants overstated the payoff balance of the Mortgage Loan, accepted payment in the amount of the overstated balance, and failed to timely refund Plaintiff and properly execute and record a release of liens in connection with the Mortgage Loan

62. Such conduct was objectively unreasonable and evaded the spirit of the bargain between Defendants and Plaintiff.

63. As a result of Defendants' misconduct and breach, Plaintiff did not receive the benefit of the bargain for which she contracted and has been otherwise damaged.

## COUNT V – Unjust Enrichment

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

65. Defendants overstated the payoff balance of the Mortgage Loan and accepted payment in the amount of the overstated balance

66. Defendants retained money from Plaintiff and the Class which, in justice and equity, Defendants should not be permitted to keep.

67. The benefit conferred by Plaintiff was non-gratuitous, Defendants realized value from this benefit, and Defendants had knowledge of that benefit. Upon information and belief, Defendants obtained and retained interest or other proceeds from investing the money that rightfully belongs to Plaintiff and the Class, and Defendants' actions deprived Plaintiff of the opportunity to invest the same money.

68. It would be inequitable for Defendants to retain this benefit without payment of the value to Plaintiff and the Class.

## COUNT VI – Conversion

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

70. Defendants overstated the payoff balance of the Mortgage Loan.

71. Defendants failed to correct their errors and provide an accurate payoff statement in a reasonable and timely fashion.

72. Plaintiff had a right of ownership and control over the funds which Defendants unlawfully withheld.

73. Plaintiff never authorized Defendants to continue to withhold funds and Defendants' exercise of control over funds that rightfully belonged to Plaintiff was inconsistent with Plaintiff's rights of ownership.

74. Defendants had actual or constructive knowledge that its exercise of control was inconsistent with Plaintiff's rights of ownership.

75. Plaintiff suffered damages as a result of Defendants' unlawful conduct.

## COUNT VII – Accounting

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

77. Defendants overstated the payoff balance of the Mortgage Loan.

78. Plaintiff seeks a full accounting of the Mortgage Loan.

## CLASS ALLEGATIONS

79. Plaintiff brings this action on behalf of a class, consisting of:

All persons residing in the United States of America, (a) for whom Nationstar and/or Cenlar serviced a loan secured by their real property, (b) who received a forbearance of such loan pursuant to 15 U.S.C. § 9056(b)(1), (c) where Nationstar and/or Cenlar failed to credit the balance of such loan with funds received from the Department of Housing and Urban Development in connection with a partial claim mortgage.

80. Additionally, Plaintiff brings this action on behalf of two subclasses.

**Subclass I**:

All persons residing in the United States of America, (a) for whom Nationstar and/or Cenlar serviced a loan secured by their real property, (b) who received a forbearance of such loan pursuant to 15 U.S.C. § 9056(b)(1), (c) where Nationstar and/or Cenlar failed to credit the balance of such loan with funds received from the Department of Housing and Urban Development in connection with a partial claim mortgage, and (d) the overstated balance resulted in an overcharge by Nationstar and/or Cenlar in connection with the sale of the real property or a refinance or other payoff of the loan.

**Subclass II**:

All persons residing in the United States of America, (a) for whom Nationstar and/or Cenlar serviced a loan secured by their real property, (b) who received a forbearance of such loan pursuant to 15 U.S.C. § 9056(b)(1), (c) where Nationstar

and/or Cenlar failed to credit the balance of such loan with funds received from the Department of Housing and Urban Development in connection with a partial claim mortgage, and (d) where Nationstar and/or Cenlar failed to execute a lien release on the partial claim mortgage in connection with the sale of the real property or a refinance or other payoff of the loan.

81. The time period for the Class and Subclasses runs as far back as the law allows.

82. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than forty members of the Class.

83. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members.

84. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

85. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer class action cases.

86. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

87. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) punitive damages;

(d) declaratory relief;

13

(e) injunctive relief;

(f) attorney fees, litigation expenses and costs of suit; and

(g) such other or further relief as the Court deems proper.

Dated: December 21, 2023

By: /s/ Mitchell L. Burgess
Mitchell Burgess   #47524
**BURGESS LAW FIRM PC**
4505 Madison Ave, Suite 200
Kansas City, Missouri 64111
(816) 471-1700/FAX (816) 471-1701
mitch@burgesslawkc.com
**ATTORNEY FOR PLAINTIFF
AND THE PROPOSED CLASS**

**ADMITTED PRO HAC VICE**

**ADEMI LLP**
Shpetim Ademi
Jesse Fruchter
Ben J. Slatky
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel. 414-482-8000
Fax 414-482-8001
sademi@ademilaw.com
jblythin@ademilaw.com
jfruchter@ademilaw.com
**ATTORNEY FOR PLAINTIFF
AND THE PROPOSED CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December 2023, a copy of the foregoing was filed electronically with the Court, with notice of the filing generated and sent electronically by the Court's CM/ECF system to all counsel of record.

/s/Mitchell L. Burgess
**ATTORNEY FOR PLAINTIFF**